**STATE of Maine**

v.

**Lawrence CURIT.**

Supreme Judicial Court of Maine.

Argued May 4, 1983.

Decided Aug. 2, 1983.

Gene Libby, Dist. Atty., Michael E. Saucier (orally), Asst. Dist. Atty., Alfred, for plaintiff.

George F. Wood (orally), Sanford, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER * and WATHEN, JJ.

* Carter, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

GODFREY, Justice.

Defendant Lawrence Curit appeals from his conviction of operating a motor vehicle while under the influence of intoxicating liquor, 29 M.R.S.A. § 1312 (Supp.1980), after a jury trial in Superior Court (York County). The only issue on appeal is whether the trial justice erred when he asked a state's witness to demonstrate how he administered a chemical breath test. We affirm the judgment.

During the trial, the state's attorney asked Trooper Michael Harriman on two occasions to describe how he administered breath tests. On the first day of trial, Harriman testified briefly how a sample is taken, then sealed and delivered to a laboratory for analysis. On the second day of trial, Harriman was recalled to establish the foundational requirements for admission of the results of the breath test on Curit. He gave the following testimony: before administering the test to Curit, he first checked to see if the kit was sealed to insure that it had not been opened earlier, then checked the kit for damage, and finally checked to see whether the kit bore the state seal of approval. After performing those preliminary steps, he opened and assembled the kit, administered the test, and then sealed the kit. Finally, he wrote the date and his initials at the appropriate places on the kit and delivered it to the laboratory.

After Harriman gave that testimony, the state's attorney said that he had no more questions for him. The trial justice then asked Harriman the following question: "Would you show us how you administered the test using that kit, please." Over defense counsel's objection, Harriman demonstrated in detail the assembly of the kit, performance of the test, disassembly of the kit and the final procedures such as sealing the kit before delivering it to the laboratory. Defense counsel moved for a mistrial on the ground that the jury could infer from the trial justice's request that he was not completely impartial. The trial justice denied the motion. After eliciting from the state's attorney that he had been with the District Attorney's office for only six months, the trial justice stated:

> That was my reason for feeling that I had the obligation to ask the question. I do not feel that the jury has taken from my question that the Court has taken an advocate's role in this matter. I feel that this is something that the Court had a right to ask so that the jury could understand better the officer's testimony.

■ On appeal, Curit contends that the trial justice erred by requesting Harriman to demonstrate the administration of the breath test. He does not argue that the demonstration was in itself prejudicial. Rather, he contends that, by requesting the only demonstrative exhibition at trial, the trial justice assumed the role of an advocate and created the impression upon the jury that he was partial. Curit argues that he must be given a new trial because the trial justice violated 14 M.R.S.A. § 1105 (1980), which prohibits a presiding justice from expressing an opinion upon issues of fact arising in the case.[1] We disagree. We do not view the request as expressing an opinion, nor do we interpret the justice's request or his explanation afterward as implying that he was concerned only to protect the prosecution.

■ Although a trial judge may not assume the role of an advocate, he is not consigned to the role of a passive moderator. *State v. Bachelder,* 403 A.2d 754, 759 (Me.1979). M.R.Evid. 614(b)[2] expressly authorizes a trial judge to interrogate wit-

---

1. 14 M.R.S.A. § 1105 provides in part: "During a jury trial the presiding justice ... shall not, during the trial ... express an opinion upon issues of fact arising in the case, and such an expression of opinion is sufficient cause for a new trial if either party aggrieved thereby and interested desires it ...."

2. M.R.Evid. 614(b) provides: "The Court may interrogate witnesses, whether called by itself or by a party."

nesses. By using the power wisely, a trial judge can effectively clarify testimony, save time or prevent a miscarriage of justice, as by bringing forward overlooked essential facts. *Bachelder,* 403 A.2d at 759; *State v. Greenwood,* 385 A.2d 803, 804 (Me. 1978). A trial judge who intervenes for those purposes must be allowed considerable latitude in questioning, *Greenwood,* 385 A.2d at 804, yet must refrain from participating in the trial in any manner from which the jury may infer that he endorses the cause of one side. *State v. Linnell,* 408 A.2d 693, 694 (Me.1979); Field & Murray, *Maine Evidence* § 614.2, (1976). Extensive examination of a witness by the judge "may lend itself to generating with the jury a serious influential impact upon their deliberations." *State v. Bachelder,* 403 A.2d at 759; *e.g., State v. Greenwood,* 385 A.2d 803 (court asked 29 leading and occasionally argumentative questions of defendant's sole supporting witness); *State v. Lint,* 361 A.2d 926 (Me.1976) (court's interrogation of defendant's sole supporting witness could be viewed only as expression of opinion that defendant's evidence was weak); *State v. Chaplin,* 308 A.2d 873, 876 (Me.1973) (judge's questions opened new field of inquiry).

The court's request to Harriman to demonstrate the test took the form of a single question that was neither leading nor argumentative. Nothing in either the form or substance of the question, or in the very fact that the justice asked the question, manifested bias on the justice's part. Because the witness had already twice given testimony on the method of administering the test, the justice did not introduce a new field of inquiry or seek to develop facts that were not suggested by the evidence already admitted. In that respect, the case is plainly distinguishable from *Chaplin,* 308 A.2d 873.

■ Curit contends that the justice asked for the demonstration solely because the prosecutor had forgotten to do so. If so, there was nothing wrong with that purpose in itself. When a trial judge intervenes to clarify evidence or prevent a miscarriage of justice, the intervention may entail the bringing out of facts that have not already been developed. As long as the intervention is otherwise within the scope of the court's authority, the mere fact that it results in the development of additional evidence does not demonstrate that the judge has exceeded the limits of his discretion. In this case, at the time the trial justice asked the question, it did not appear that the evidence to be elicited would benefit the prosecution any more than the defense.

It is true that in an adversarial system lines must be drawn somewhere to mark the bounds of judicial discretion even to intervene to clarify evidence or prevent a miscarriage of justice. Our adversarial system assumes that the truth is most likely to emerge if the attorney for each litigant is held fully responsible for planning the presentation of his client's case. Judicial intervention tends to detract from that responsibility and, if excessive or unwise, may disrupt to some extent the attorney's plan for presenting his client's side of the case. Such intervention tends to impair the litigant's right to have the strategy and tactics employed in presenting his cause determined by his attorney, not by the judge. Hence the rule barring the judge from engaging in wide-ranging inquiries about matters not theretofore the subject of any testimony. *See Chaplin,* 308 A.2d at 876.

The principal line demarking the trial judge's discretion relates to another basic feature of our adversarial system: that where a jury serves in the role of factfinder, the presiding judge must avoid manifesting his own opinions about the evidence lest, out of deference to his authority, the jury be influenced by those opinions. *See* 14 M.R.S.A. § 1105 (1980). In this case, even if we assume with Curit that the trial justice's purpose in requesting the demonstration was to fill a gap in the state's foundational testimony, we find nothing in the record suggesting that his purpose was

apparent to the jury. Furthermore, nothing in the record creates any reason to believe that the jury would have inferred from the fact that the request was made by the trial justice that he had adopted the prosecutor's view of the case. We conclude that the request came within the discretion a trial judge may properly exercise to clarify testimony or prevent a miscarriage of justice.

The entry is:

Judgment affirmed.

All concurring.