STATE of Maine

v.

**Robert Alan CHAPMAN.**

Supreme Judicial Court of Maine.

Argued March 8, 1985.

Decided July 23, 1985.

James E. Tierney, Atty. Gen., Charles K.
Leadbetter, Eric E. Wright (orally), Anita

M. St. Onge, Asst. Attys. Gen., Augusta, for the State.

Libhart & Ferm by William N. Ferm (orally), Silsby & Silsby by Sandra Hylander Collier, Ellsworth, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

Robert Alan Chapman, the defendant, appeals from a judgment of the Superior Court, Hancock County, entered on the jury's verdict finding him guilty of manslaughter in violation of 17-A M.R.S.A. § 203 (1983). The defendant alleges the trial court erred in denying several of his pretrial motions, in ruling on a number of evidentiary matters during the course of the trial, in instructing the jury, and in imposing sentence. We find no error and affirm the judgment.

On April 6, 1982, the defendant was indicted for the 1978 murder of his five-week old son, Kevin Paul Chapman. During the first trial, the court granted the defendant's motion for a mistrial. The State elected to re-try the defendant, and the second trial began on June 4, 1984. At the conclusion of the State's case, the defense rested. The jury found the defendant guilty of Class A manslaughter. We address each of the defendant's numerous allegations of error and set forth the facts as they become pertinent.

### I. Pretrial Motions

#### A. Double Jeopardy

Following the mistrial declaration in 1983, the State filed a motion for a new trial. The defendant moved to dismiss the indictment on double jeopardy grounds, Me. Const. art. I, § 8 and U.S. Const. amend. V, cl. 2, claiming the prosecutor's conduct at the first trial was intended to provoke the defendant to move for a mistrial. Finding that the prosecutor's conduct was not so intended, the court denied the defendant's motion.

The circumstances giving rise to the defendant's motion for a mistrial were as follows: By direct examination of a forensic pathologist, the State attempted to elicit her opinion as to the cause of the death of Kevin Chapman. The court twice sustained objections of the defendant on the grounds of improper foundation. The State then inquired into the witness's review of the child's medical records. The State further inquired:

Q: And these are the things that led you to a conclusion?

A: Yes.

Q: May I ask what your opinion is?

A: The cause of death was severe blunt trauma to the head. The bruises indicate the child had been assaulted.

The defendant objected and moved for a mistrial. After both the State and the defendant rejected the court's proposed curative instruction, the court granted the defendant's motion. The defendant asserts that the prosecutor intentionally elicited the inadmissible testimony.

We have previously sought guidance from the decisions of the United States Supreme Court on double jeopardy in two respects: (1) as precedentially controlling in delineating the binding effect on the states of the federal Constitution's protection against double jeopardy, and (2) as most helpful guides regarding the scope of protection against double jeopardy afforded by Maine's Constitution. *State v. Flick*, 495 A.2d 339, No. 3869 (Me.1985); *State v. Howes*, 432 A.2d 419, 423 (Me.1981). The Supreme Court has held that when the defendant moves for a mistrial, the Double Jeopardy Clause is no bar to a retrial, save in those circumstances where "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Oregon v. Kennedy*, 456 U.S. 667, 673, 679, 102 S.Ct. 2083, 2088, 2091, 72 L.Ed.2d 416 (1982). We hold the same standard applies under the Maine Constitution.

Turning to the instant case, we note that the justice who denied the defend-

ant's motion to dismiss presided at the original trial. The factual determination by the trial court that there was no prosecutorial conduct intended to provoke the defendant into moving for a mistrial will not be disturbed unless it is clearly erroneous. *State v. McLain*, 367 A.2d 213, 217–18 (Me.1976); *State v. Walker*, 341 A.2d 700, 702–703 (Me.1975). *See Anderson v. Bessemer City*, —— U.S. ——, ——, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985). After a careful review of the record of the first trial of this case, we hold that the finding of the trial justice was not clearly erroneous.

## B. Pre-indictment delay

Kevin Chapman died on March 22, 1978. The indictment was returned on April 6, 1982. Prior to the first trial, the defendant, in a motion to dismiss the indictment, alleged the more than four-year delay denied him due process by unjustifiably prejudicing his ability to present a defense. After a hearing, the trial court denied the motion. The defendant renewed the motion prior to the second trial, and again the trial judge denied the motion.[1]

The defendant argues, as he did before the trial court, that Kevin Chapman received serious injuries on March 16, 1978, while in the care and custody of his father. Extensive medical records were compiled during the six days of Kevin's hospitalization that disclosed several physicians and nurses reported Kevin as a victim of child abuse. A state police detective was assigned to take charge of the investigation at this time, and interviews were conducted of several persons, including the defendant and his wife. After Kevin's death, an autopsy was performed and the results reported to the investigating officers. The defendant claims that no further

investigation was done by the State prior to the indictment and as a result of the lapse of time between the victim's death and the defendant's indictment, the defendant was prejudiced by: (1) the changes in the physical setting within the trailer where the defendant alleged he had stumbled while carrying Kevin (the furniture had been rearranged or destroyed), (2) the loss of autopsy photographs and original notes of investigating officers, (3) the loss of the opportunity to conduct an independent autopsy that might have disclosed that the bruises on Kevin's body stemmed from the same incident as that causing the head injury, and (4) the inability to obtain contemporaneous detailed recollection of the health professionals who had examined or treated Kevin.[2]

The defendant further argues that at hearing on the defendant's motion, the prosecutor advised the court he was the prosecutor involved in the case and had reviewed the case in 1978, and "quite frankly [it] got by me." The State acknowledged it was not until 1981, after a reevaluation of the same evidence as a result of an inquiry by the Texas authorities concerning the defendant, that the State decided to seek an indictment.

When the State's pre-indictment delay is alleged to be an impermissible departure from the standards of due process, we have held that "before the prosecution is under any obligation to come forward with evidence explaining its delay, the burden is on the defendant to make out a *prima facie* case of actual and undeniable prejudice." *State v. Hutchins*, 433 A.2d 419, 423 (Me. 1981). "The ultimate burden of persuasion remains with the defendant, and actual prejudice must be established at the threshold." *Id.* The defendant contends he has met this burden, but the prosecution did

---

**1.** The defendant did not specify whether he based his motion on a violation of the 14th Amendment or art. I, § 6–A of the Maine Constitution.

**2.** On appeal, the defendant does not include the additional ground of missing witnesses claimed

before the trial court. However, the record reveals that not only did the defendant fail to establish any prejudice to him by the claimed unavailability but also failed to prove that any witnesses were indeed unavailable.

not meet its burden of a justifiable explanation for the pre-indictment delay.

A review of the record discloses that (1) the defendant failed to demonstrate how an earlier indictment might have prevented the alteration of the physical setting inside the trailer by other tenants; nor was the defendant foreclosed from offering testimony as to the furniture arrangement within the trailer on the critical date; (2) the State explained that the autopsy photographs did not develop and that only one officer involved in the investigation destroyed his rough notes after transcription of them into the police report that was available to the defendant; (3) the defendant failed to show how the State's delay prevented him from seeking a medical examination of the child at time of death, and the report of the performed autopsy was available to the defendant; and (4) the observations of all the medical personnel who examined or treated Kevin were transcribed at the time and were made available to the defendant through discovery. As in *State v. Hutchins,* this case does not turn on the explanation for the pre-indictment delay. The defendant had the burden of establishing a causal connection between the four-year delay and any actual prejudice to his defense. The defendant did not meet that burden. Accordingly, we find no error in the trial court's denial of the defendant's motion to dismiss the indictment.

## C.   The Chief Medical Examiner's Finding of Accidental Death

The defendant also appeals the denial of his motion to dismiss the indictment based on the Chief Medical Examiner's 1978 finding that the cause of Kevin Chapman's death was accidental. We do not credit the defendant's suggestion that a

finding by the Chief Medical Examiner is binding upon the Attorney General, and we hold that the motion was properly denied.

We note that 22 M.R.S.A. § 3022 (1980) establishes the Office of Chief Medical Examiner within the Department of the Attorney General. Furthermore, 5 M.R.S.A. § 200–A (1979) places "full responsibility for the direction and control of all investigation and prosecution of homicides" in the Attorney General. Clearly, the Chief Medical Examiner's authority is subordinate to that of the Attorney General. A finding by the Chief Medical Examiner does not in any way diminish the Attorney General's "power and duty to institute, conduct and maintain" prosecutions. *See In re Estate of Thompson,* 414 A.2d 881, 890 (Me.1980).

## D.   The Motion *In Limine* to Suppress Evidence of a Prior Crime

In a motion made prior to and renewed on the first day of trial, the defendant sought to suppress evidence of his prior conviction in Texas for a similar type of offense.[3] In each instance the trial justice "reserved ruling until evidence has been properly admitted, in order that any potential prejudice may be more clearly assessed." Further, he cautioned the State not to attempt to introduce such evidence without first giving the court an opportunity outside the presence of the jury to determine its purpose and make a ruling as to its admissibility. At the conclusion of the State's case, the defense rested without further discussion of the motion. In chambers, the defense counsel noted that the decision to rest was made out of fear that evidence of the Texas incident would be admitted. On appeal, the defendant argues that his right to testify in his own behalf

---

**3.**   When the motion *in limine* was first made, the State assured the court it did not intend to use evidence of the defendant's prior conviction in Texas in its case-in-chief. However, the State argued that evidence surrounding that conviction might be admissible to disprove that Kevin's death was accidental. *See* M.R.Evid. 404(b). At oral argument, the parties agreed that what

began as a motion grounded on M.R.Evid. 609 (impeachment by evidence of conviction of crime) had become, instead, one grounded on M.R.Evid. 404(b) (admissibility of other crimes, wrongs, or acts). Prior to resting, the defendant had not renewed his motion grounded on M.R. Evid. 609.

was impermissibly chilled by the trial justice's refusal to rule on the motion *in limine*. We disagree.

The rule governing motions *in limine* explicitly allows the trial justice to reserve ruling on the motion. The rule provides:

> The defendant or the State may make a pretrial motion requesting a pretrial ruling on the admissibility of evidence at trial or on other matters relating to the conduct of the trial. The court may rule on the motion or continue it for a ruling at trial. In determining whether to rule on the motion or to continue it, the court should consider the importance of the issue presented, the desirability that it be resolved prior to trial, and the appropriateness of having the ruling made by the justice who will preside at trial. For good cause shown the trial justice may change a ruling made in limine.

M.R.Crim.P. 12(c). We have previously held that "a trial judge is perfectly justified in refusing to make a final ruling *in limine* on the admissibility of evidence, preferring instead to hear the testimony of witnesses during the trial." *State v. Ayers*, 468 A.2d 606, 609 (Me.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1919, 80 L.Ed.2d 466 (1984); *State v. Dodge*, 397 A.2d 588, 592, 593 (Me.1979).

We note that in the instant case, we have no evidence of how the presiding justice might have ruled had the defendant testified, nor any assurance that the defendant would have offered any testimony had the motion been granted. The defendant agreed with the trial court that the cautionary warning by the court to the State would prevent the State from mentioning the existence of evidence that might prove to be highly prejudicial to this defendant without a prior ruling by the court as to its admissibility. On this record, we hold that the trial justice properly deferred his ruling until he had heard the testimony of the defendant and the nature of the evidence that the State might seek to introduce. *State v. Dodge*, 397 A.2d at 593. *See Luce v. United States*, — U.S. —, — – —, 105 S.Ct. 460, 463–64, 83 L.Ed.2d 443, 447–48 (1984).

## E. The Motion to Suppress Admissions

■ The defendant appeals the denial of his motion to suppress statements made to Maine State Police Corporal Ronald Libby. Because the defendant's statements to Libby were never introduced at trial, we hold that the denial of his motion to suppress is not cognizable on appeal. To hold otherwise would be to indulge merely in an advisory ruling, something we have traditionally abjured. *State v. Ayers*, 468 A.2d at 609.

## II. The *Corpus Delicti* Rule

The defendant argues that the State failed to establish the *corpus delicti* independent of any admission or confession of the defendant. We disagree.

In *State v. Anderson*, 409 A.2d 1290, 1301 (Me.1979), we noted that the *corpus delicti* of homicide consisted of two elements: "(1) the fact of death of the victim; and (2) the criminal agency of another responsible for that death." Moreover, "the *corpus delicti* cannot be established by the extra-judicial confession ... unsupported by other evidence." *State v. Levesque*, 146 Me. 351, 358, 81 A.2d 665, 669 (1951).

■ In *State v. Curlew*, 459 A.2d 160, 163 (Me.1983), we expressed our preference for requiring proof of the *corpus delicti* before admitting in evidence a confession or admission of guilt. Nevertheless, strict adherence to this procedural requirement is no longer required under Maine law. *State v. Rowe*, 479 A.2d 1296, 1300 (Me.1984); M.R.Evid. 611.

■ The substantive component of the *corpus delicti* rule requires that there be sufficient evidence of the *corpus delicti* exclusive of any admission or confession of the defendant. *State v. Curlew*, 459 A.2d at 164. Using what resembles a probable cause standard, the trial justice evaluates this evidence. *Id.* at 165.

It is not open to dispute that the State satisfied the first element of the *corpus delicti* rule by proving that Kevin Chapman was the child that died on March 22, 1978. To satisfy the second element the State was obligated to present evidence that created a substantial belief that Kevin Chapman's death was not suicide, not due to natural causes, and not purely accidental and devoid of any criminal agency. *State v. Shanahan,* 404 A.2d 975, 980, 981 (Me. 1979). Bearing in mind these legal principles, we examine the evidence presented by the State to determine if it has met its burden of proof, exclusive of any admissions or confessions of the defendant.

The State's offered evidence was as follows:

Dr. George Chase, a pathologist, performed the autopsy on Kevin Chapman. His testimony was that Kevin was five weeks of age at the time of his death; that his body had sustained multiple bruises of various colorations indicating they were incurred at different points in time; that the brain was flattened and unusually soft; that the cause of death was due to a head injury with a subdural hematoma caused by a blunt force applied to the head, tearing the small vessels between the dura and the brain and allowing the blood to leak into the space between the dura and the brain.

Hospital Corpsman Stephen Mandel testified that only the defendant and Kevin were at the residence when he arrived in response to an emergency call.

Dr. William Sturner, a forensic pathologist, distinguished a "coup" and "contrecoup" injury. As related to the present case, he testified that the subdural hematoma immediately beneath the external bruising on Kevin's head took place when the object doing the striking was in movement and the head was stationary, and was a "coup" injury. This, as distinguished from the "contrecoup" injury where the hematoma would occur on the opposite side of the head from the external bruising and would take place when the head was moving and the place that it struck was stationary.

The evidence proffered by the State was clearly sufficient to meet the necessary standard of proof that the child's death was not from natural causes or due to the act of the five-week old child. The evidence that the defendant was alone with the child at the time of arrival of Corpsman Mandel, that the autopsy revealed the child died from a subdural hematoma resulting from a blunt force applied to his head, and that the location of the hematoma evidenced that the object doing the striking was in movement while the head was stationary, satisfied the second element of the *corpus delicti* rule that a criminal agency had been at work.

### III. The Sufficiency of the Evidence

The defendant argues the trial court erred in not granting his timely motion for judgment of acquittal, asserting that the evidence was insufficient to support the jury verdict.

A conviction challenged on the insufficiency of the evidence will be set aside only if, after viewing the evidence in the light most favorable to the prosecution, no trier of fact could rationally have found the essential elements of the crime beyond a reasonable doubt. *State v. Snow,* 464 A.2d 958, 961 (Me.1983). The essential question here, as in *State v. Silva,* 153 Me. 89, 134 A.2d 628 (Me.1957), is whether Kevin Chapman died as a result of violent force recklessly or with criminal negligence applied by this defendant.

On the basis of the evidence produced at trial, the jury could have found the following: (1) the cause of death was a subdural hematoma; (2) the blow to the head that caused the subdural hematoma was a coup injury, one which occurs when the object doing the striking is in motion and the head is stationary; (3) the child's age effectively removed it from the normal accident hazards faced by an older child; (4) the defendant, who first called for emer-

gency aid, was alone with the child when Corpsman Mandel arrived at the Chapman residence; (5) the defendant's story of tripping while carrying the child established him as the agent of the fatal injury; (6) the defendant's explanation for the fatal injury based on accidental causation was inconsistent with its severity and with the nature of a coup injury; (7) the finding of a multiplicity of bruises of varying colors on the baby's body suggested a pattern of mistreatment; (8) the parents' claim of ignorance as to the source of the multiple bruises was improbable; (9) the medical experts were correct in identifying the victim as a battered child. *See State v. Silva,* 134 A.2d at 635. We hold that these conclusions, based upon the evidence and reasonable inferences drawn therefrom, were sufficient for the jury rationally to have found the defendant guilty beyond a reasonable doubt.

## IV. Erroneous Instructions

### A. Concurrent Causation

The defendant contends there is error in the trial court's instruction on concurrent causation and in its instruction on the *mens rea* of manslaughter. We do not agree with either contention.

■ Although the court initially gave a proper instruction,[4] we agree that in a portion of a later instruction, the court misstated the law on concurrent causation. We note, however, that the latter instruction concerned the crime of murder for which the defendant was not convicted. When instructing on the lesser included offense of manslaughter, the crime for which the jury found the defendant guilty,

the court again properly instructed the jury on this issue. Our careful review of the record discloses no evidence of a cause of the fatal injury to Kevin separate from the defendant's admitted conduct. The critical issue in this case was the nature of the defendant's conduct. The trial court's instruction on concurrent causation, therefore, did not result in any prejudice to the defendant.

■ Although the trial court's instruction on the *mens rea* of manslaughter did not track the exact language of 17–A M.R.S.A. § 10(3) and (4) (Pamph.1978), we detect no error in the substance of that instruction.

## V. Sentence

■ Finally, the defendant challenges the legality of the trial court's imposition of a sentence consecutive to that being served by the defendant in Texas for a similar crime. He claims that in its imposition of sentence the court relied on 17–A M.R.S.A. § 1253(1–A) (1984), which had not been enacted until after Kevin Chapman's death.

There is nothing in this record to suggest the court was acting pursuant to 17–A M.R.S.A. § 1253(1–A). We have previously held that "the claimed illegality of a sentence can be given ultimate cognizance on direct appeal only where the alleged sentencing infirmity appears so plainly on the face of the record that there can be no rational disagreement as to its existence." *State v. Blanchard,* 409 A.2d 229, 233 (Me. 1979). Because the record clearly reflects the trial court's compliance with 17–A M.R.S.A. § 1155 (Pamph.1978),[5] we hold the de-

---

**4.** At the time of Kevin Chapman's death, 17–A M.R.S.A. § 56 (Pamph.1978), provided:

Unless otherwise provided, when causing a result is an element of a crime, causation may be found where the result would not have occurred but for the conduct of the defendant operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the Defendant was clearly insufficient.

Section 56 was recodified without change in 1981 as 17–A M.R.S.A. § 33 (1984).

**5.** Title 17–A M.R.S.A. § 1155 (Pamph.1978), repealed and replaced by 17–A M.R.S.A. § 1256 in 1981, provided in pertinent part:

(3) Unless the court sets forth in detail for the record the findings described in subsection 4, it shall not ...

B. Impose consecutive imprisonment terms

fendant's challenge to the consecutive sentence imposed is not cognizable on this appeal.

The entry is:

Judgment affirmed.

All concurring.

(4) The findings referred to in subsection 3 are the reasons why, having regard to the nature and circumstances of the crime, and the history and character of the defendant, the court is of the opinion that there are exceptional features in the case which require the sentence imposed.