STATE of Maine

v.

**Fred Roy DISCHER, III.**

Supreme Judicial Court of Maine.

Argued June 6, 1991.
Decided Sept. 30, 1991.

Michael E. Carpenter, Atty. Gen., Garry L. Greene (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Jennifer Nichols Ferguson, Fales & Fales, Lewiston, William Maselli (orally), Andover, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY *, JJ.

WATHEN, Justice.

Defendant, Fred Roy Discher, III, appeals from his conviction of manslaughter, Class A, 17–A M.R.S.A. § 203(1)(A) (1983), entered after a jury trial in the Superior Court (Androscoggin County, *Alexander, J.*). Defendant argues that the Superior Court erred in refusing to grant a judgment of acquittal due to the State's alleged failure to establish the *corpus delicti.* Al-

ternatively, he contends that the judgment should be vacated on three separate grounds: (1) the Superior Court compromised defendant's right to a fair trial by assuming the role of a partisan advocate during the trial, (2) the Superior Court erred in admitting the unsworn out-of-court statements of two witnesses as substantive evidence, and (3) the evidence was insufficient to sustain defendant's conviction. Defendant also challenges the legality of his sentence. We affirm the Superior Court's judgment.

On January 27, 1989, Kristean Soucy summoned emergency medical assistance for her 9–day–old daughter, Heather Discher, who was also defendant's child. When the paramedics arrived, they found the baby unconscious, limp, blue in color, and just barely breathing. She was taken to Central Maine Medical Center where the doctors who examined her concluded that she was suffering from "shaken baby syndrome," a serious condition which can occur when someone shakes a young child too vigorously. A post-mortem examination following the baby's death three days later confirmed this diagnosis. That evening, a social worker telephoned defendant to inform him that his older daughter would have to be removed from the home due to the nature of the baby's injuries. The social worker testified that, during their conversation, defendant began crying and stated that "the baby was innocent" and hadn't done anything wrong, and "he couldn't stand that high-pitched squeaky cry."

Following his arrest, defendant was hospitalized in Augusta. The baby's mother and a close friend each visited him there. Although the baby's mother testified at trial that she did not recall defendant telling her that he had shaken the baby, shortly after the hospital visit she reported to police in a tape recorded interview that defendant had told her that "he couldn't stand the crying" and that he shook the baby 10 or 20 seconds at the most. Likewise, the friend told police in a tape record-

---

* Brody, J. sat at oral argument and participated in the initial conference but resigned before this

opinion was adopted.

ed interview that defendant had stated, "I don't know what I did and why I did it" and "I didn't shake her that hard." At trial, the friend testified that he did not recall relating these statements to the police. Silently reading a transcript of the tape recorded interview and listening to the tape itself in the absence of the jury failed to refresh the recollection of either witness.

Following the testimony of these two witnesses, the State requested a ten-minute recess in which to consider whether it could "in good faith go forward with this case." In response, the presiding justice said, "I thought you had tapes of those interviews." After the State responded affirmatively, defense counsel asserted that the taped material could only be used for impeachment and not as substantive evidence. To this, the court replied, "No, section 5 of 803." Later in the trial, the State sought to lay the foundation for admitting the tape recordings of both interviews as past recollections recorded under M.R.Evid. 803(5). Over defendant's objection, the court permitted a partial transcript of the tape recordings to be read aloud to the jury.

After the State rested, defendant moved for a judgment of acquittal which the court denied. The jury found defendant guilty of manslaughter, and the court sentenced him to ten years, with all but five suspended, and six years on probation.

*Corpus Delicti*

■ Defendant contends, first, that the State failed to establish the *corpus delicti* to a probable cause standard, independent of any admission or confession of defendant[1]. In order to withstand a motion for acquittal in a manslaughter prosecution, the *corpus delicti* rule requires the State to prove that the victim died and that a criminal agency was responsible for that death. Moreover, the *corpus delicti* can-

not be established solely by post-crime admissions or confessions which are unsupported by any other evidence. *See State v. Chapman*, 496 A.2d 297, 303 (Me.1985).

■ It is not open to dispute that the State satisfied the first element of the *corpus delicti* rule, that Heather Discher was the baby that died on January 30, 1989. To satisfy the second element, the State was obligated to present evidence that created a substantial belief that the baby's death "was not suicide, not due to natural causes, and not purely accidental and devoid of any criminal agency." *State v. Chapman*, 496 A.2d at 304. In determining whether it has met its burden of proof, we must examine the evidence presented by the State, exclusive of any admissions or confessions of defendant. *See id.*

■ The State offered the following evidence: Both the attending physician and the medical examiner determined that the 9-day-old baby was a victim of "shaken baby syndrome." Although the physician conceded that "over-vigorous pathogenic shaking" might occur inadvertently during rough play or while attempting to dislodge a suspected foreign object from the mouth or throat of a child or to stop violent coughing or protracted crying, she opined that such over-shaking would be an unlikely cause of this baby's injuries. Moreover, the testimony revealed only two known incidents that may have involved rough handling of the baby, and the court reasonably could have concluded that these incidents did not contribute to the baby's death.

In *State v. Chapman*, we found that the State had established the *corpus delicti* in a child-abuse manslaughter case in which the pathologist had determined that the 5-week-old victim's body had sustained multiple bruises, that his brain was flattened and unusually soft, and that the cause of death was due to a head injury caused by

---

1. The State must prove the *corpus delicti* to two separate standards:

   First, independent of any post-crime admissions or confessions made by defendant, the State must have proved the *corpus delicti* to a probable cause standard, i.e., the State must have proved the basis for a substantial belief therein. Then the State must also have estab-

   lished the *corpus delicti* beyond a reasonable doubt considering the entire evidence, including any post-crime admissions or confessions made by defendant.

   *State v. Libby*, 546 A.2d 444, 451 (Me.1988) (footnote omitted). Only the first standard is at issue in this case.

blunt force. *See id.* Together with the hospital corpsman's testimony that the defendant was alone with the child when he arrived, we found the evidence sufficient to meet the necessary standard of proof that the child's death was not from natural causes or due to his own actions. *See id.* In the present case, given the baby's tender age, her lack of mobility, and the dearth of evidence that an accident of any proportion had occurred, the testimony concerning the nature of her injuries provided the basis for a substantial belief that a criminal agency was responsible for her death and satisfied the second element of the *corpus delicti* rule.

### Judicial Conduct

Defendant contends that the Superior Court abandoned the role of neutral magistrate and became a partisan advocate when informing the State that the witnesses' tape recordings recounting defendant's admissions could be admissible as substantive evidence under M.R.Evid. 803(5). Characterizing the court's comment as unsolicited tactical advice that "tainted the trial" and "undermined the guarantee of judicial impartiality," defendant calls for a reversal of the judgment.

The Superior Court is authorized to rule upon all matters of law arising in the case, but may not, during a jury trial, express opinions on issues of fact. *See* 14 M.R.S.A. § 1105 (1980). It is well settled in Maine law that the statute limiting the court's expression of opinion at trial must be strictly construed "if it is not to be held to trench upon the prerogative of the court." *State v. Stuart,* 132 Me. 107, 109, 167 A. 550, 551 (1933). Thus, the statute has reference only to factual issues to be determined by the jury. It has no application to the present case involving a question of law addressed only to the court. *See id.,* 167 A. at 551.

While the Superior Court is not permitted to assume the role of an advocate, it is "not confined to the role of a passive moderator." *State v. Pickering,* 491 A.2d 560, 563 (Me.1985); *see also State v. Curit,* 462 A.2d 1188, 1189 (Me.1983);

*State v. Bachelder,* 403 A.2d 754, 759 (Me. 1979). We have consistently held that a trial court may intervene to "clarify testimony, save time or prevent a miscarriage of justice.... As long as the intervention is otherwise within the scope of the court's authority, the mere fact that it results in the development of additional evidence does not demonstrate that the [court] has exceeded the limits of [its] discretion." *State v. Curit,* 462 A.2d at 1190.

In *State v. Curit,* we exhorted:

> Our adversarial system assumes that the truth is most likely to emerge if the attorney for each litigant is held fully responsible for planning the presentation of his [or her] client's case. Judicial intervention tends to detract from that responsibility and, if excessive or unwise, may disrupt to some extent the attorney's plan for presenting his [or her] client's side of the case.

*Id.* In this case, the court pointed out the relevance of M.R.Evid. 803(5) to the situation at hand. There is nothing in the record to suggest that the State was unaware of the applicability of the rule or that the court's comment impaired defendant's "right to have the strategy and tactics employed in presenting his cause determined by his attorney, not by the [court]." *Id.* The paramount concern in cases involving judicial intervention "has been that the [court] not participate in any manner from which the jury may infer that [it] endorses the cause of one side." *State v. Pickering,* 491 A.2d at 564. Because the jury was unable to hear the court's comment to counsel, this concern is absent. Even if we assume that the Superior Court's purpose in commenting on the rule was to ensure the State's consideration of its relevance, this purpose was not apparent to the jury. An examination of the record reveals that the participation of the court was not improper. The clarification of a purely legal issue, in the absence of the jury, came within the discretion a trial court may properly exercise to prevent a miscarriage of justice.

### Past recollection recorded hearsay exception (M.R.Evid. 803(5))

Although defendant concedes that the unsworn, out-of-court statements given to the police by his friend and the baby's mother were admissible as impeachment evidence, pursuant to M.R.Evid. 607, he contends that the court committed reversible error by admitting them as substantive evidence. Citing *State v. Vigue*, 420 A.2d 242, 244 n. 1 (Me.1980), defendant argues that testimony as to such prior unsworn, inconsistent statements of witnesses may be admitted for the limited purpose of impeaching those witnesses, but not for purposes of affirmative proof. The State, however, maintains that the testimony was properly admitted as substantive evidence under M.R.Evid. 803(5) which provides:

> The following [is] not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> .  .  .  .  .
>
> (5) **Recorded Recollection.** A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admissible, the memorandum or record may be read into evidence but shall not be received as an exhibit unless offered by an adverse party.

■ Under the past recollection recorded exception to the hearsay rule, a document may be admitted as substantive evidence if the witness states as his present memory that:

> (1) the contents of the document are a record of matters in fact previously known to, and remembered by, him; (2) the record had been previously made, or seen, by him at a time when his memory of the matters was *then* fresh ...; and (3) at that past time the record was *then* remembered to be an accurate record of the matters described.

*Cope v. Sevigny*, 289 A.2d 682, 688 (Me. 1972) (citations omitted, emphasis in origi-

nal); *see also State v. Degen*, 552 A.2d 2, 3 (Me.1988). In the present case, the Superior Court determined that the foundational requirements were met as to each witness and ruled that a partial transcript of their tape recorded statements could be read to the jury as substantive evidence. On appeal, defendant does not dispute that the tape recordings are an accurate memorandum of the witnesses' statements to the police. He argues, however, that the foundational requirements for the admission of the statements, pursuant to Rule 803(5), were not met because the witnesses never testified that the statements were true and accurate at the time they were given to the police.

Rule 803(5) seeks to ensure that witnesses correctly recorded their knowledge when they remembered what they perceived. To ensure that the past recollection is trustworthy, the rule requires the memorandum to have been made or adopted when the matter was fresh in the witness's memory. To guarantee that the memory was properly transcribed, it requires that the memorandum reflect that knowledge correctly. *See* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(5)[01] (1990). Although in *Cope* we required testimony from the witness to establish the foundational requirements, the advisory committee's note to Fed.R.Evid. 803(5), which served as a model for the Maine rule, states: "No attempt is made in the exception to spell out the method of establishing the initial knowledge or the contemporaneity and accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate."

■ Under the Maine Rules of Evidence, "[w]hen the admissibility of other evidence of contents of writings, recordings, or photographs under these rules depends upon the fulfillment of a condition of fact, the question whether the condition has been fulfilled is for the court to determine...." M.R.Evid. 1008. Here, the witnesses' initial knowledge and the contemporaneity and accuracy of the tape recordings are conditions of fact that must be fulfilled before the statements may be admitted under M.R.Evid. 803(5). According to the ad-

visory committee's note, these conditions may be fulfilled in different ways, "as the circumstances of the particular case might indicate." Often, the witness will readily testify as to his present memory that a memorandum represents "a record of matters previously known to him, made by him at a time when his memory was fresh, and known by him to be accurate." *State v. Degen*, 552 A.2d at 3. This is the scenario we anticipated in *Cope*. Sometimes, however, a witness may be unable or unwilling to testify from present memory. Further inquiry into the ability of the witness to recall the event in question could be time-consuming and unproductive. *See Commonwealth v. Cargo*, 498 Pa. 5, 444 A.2d 639, 644 (1982). At such times, it is within the discretion of the trial court to determine whether the foundational requirements of Rule 803(5) have been satisfied on a case-by-case basis, whether by direct or circumstantial evidence. *See id.*

▆▆▆▆ In the present case, the witnesses testified that they remembered making a tape recorded statement to the police, but could not recall telling police anything that defendant had said about shaking the baby. Both stated repeatedly that defendant had never made such a statement to them. The baby's mother testified that the police interview had taken place a few days after her conversation with defendant, and the friend testified that it had occurred within a few days or a few weeks of his conversation, at a time when he remembered talking to defendant at the hospital. Although there is no evidence to support the conclusion that the baby's mother accurately described her conversation with defendant to the police, there is adequate evidentiary support with regard to the friend's statement. When asked whether he had told the police what had occurred when he visited defendant at the hospital, the friend replied, "I believe I did." To the question, "Did you remember it then?" he answered, "I'm not sure. I must have."

"The touchstone for admission of evidence as an exception to the hearsay rule has been the existence of circumstances which attest to its trustworthiness." *United States v. Williams*, 571 F.2d 344, 350 (6th Cir.1978). Here, the accuracy of the tape recording is not in question and the Superior Court heard testimony establishing its contemporaneity. In determining whether the friend's statement reflects his initial knowledge correctly, the court relied both on his testimony and circumstantial evidence concerning the limited likelihood that he would have lied during a tape recorded police interview and the current motivation he might have to forget any statements he made earlier that could now prove incriminating to defendant.

Because the friend's statement contained the indicia of trustworthiness required by Rule 803(5), we find no abuse of discretion in the determination of the Superior Court that a partial transcript of the statement could be read to the jury. It was within the court's discretion to discount his present disclaimer of the statements and find it admissible as past recollection recorded for whatever weight the jury saw fit to give it. In view of his unwillingness to testify and his relationship with defendant, it was not error for the court to permit his statements to be submitted to the jury as substantive evidence. *See People v. Dillenbeck*, 115 A.D.2d 331, 332–33, 496 N.Y.S.2d 159, 160–61 (1985). Although a proper foundation for the statement of the baby's mother was not established, the admission of the evidence was harmless in light of the defendant's statement, together with the other evidence in the case.

### Sufficiency of the evidence

Defendant next argues that the judgment of conviction must be vacated due to the insufficiency of the evidence even if the out-of-court statements of the baby's mother and defendant's friend were properly admitted. The standard by which we review the legal sufficiency of the evidence is "whether, based on that evidence viewed in the light most favorable to the prosecution, any trier of fact rationally could find beyond a reasonable doubt every element of the offense charged." *State v. Barry*, 495 A.2d 825, 826 (Me.1985). Citing cases holding that properly admitted hearsay statements are insufficient to sustain a criminal conviction, defendant contends that the State presented no other evidence regarding who caused the baby's death. *See, e.g.,*

*United States v. Orrico*, 599 F.2d 113, 118–19 (6th Cir.1979); *State v. Mancine*, 241 N.J.Super. 166, 188–190, 574 A.2d 525, 536–38 (1990); *State v. Gommenginger*, 790 P.2d 455, 463 (Mont.1990); *State v. Ramsey*, 782 P.2d 480, 484 (Utah 1989).

Aside from defendant's admission contained in the statement of his friend, the State presented the following evidence of defendant's guilt: (1) the uncontroverted medical testimony establishing that death resulted from overvigorous shaking of the baby, and (2) the circumstantial evidence that defendant, bothered by the baby's high-pitched crying, had shaken her to quiet her down. Defendant made no serious attempt to establish an alternative suspect theory, and the social worker testified that defendant told her he "couldn't stand that high-pitched squeaky cry." Even without defendant's admission to his friend, the evidence would be sufficient to uphold his conviction. Because we find that the friend's statement was properly admitted as substantive proof, the sufficiency of the evidence is beyond dispute. Viewing the evidence in the light most favorable to the prosecution, we find that a trier of fact could rationally have found the essential elements of the crime beyond a reasonable doubt.

### Legality of sentencing

Defendant argues that the Superior Court imposed his sentence in an illegal manner, contending that the court enhanced the sentence because defendant exercised his fifth amendment right to remain silent and failed to personally address the court on the issue of remorse. During the sentencing hearing, the court referred to a lack of remorse on the part of both defendant and his friends, stating that he would not consider individualized disposition, pursuant to 17–A M.R.S.A. § 1151(6) (1983),[2] when he had not "heard much about remorse." When defendant's counsel suggested the unfairness of penalizing defendant for exercising his fifth amendment

right not to testify, the court stated, "I'm obligated to consider what we have on the record on remorse. What we have on remorse that's available is the sworn testimony of his buddies that indicated this wasn't a big issue in the house such that it wasn't discussed and whatever had been discussed earlier was of—of such insignificance that it was, according to them, forgotten."

Because defendant challenges his sentence on constitutional grounds, the issue before us on direct appeal is one of legality, not propriety. *See State v. Palmer*, 468 A.2d 985, 987 (Me.1983).[3] To establish illegality, the alleged sentencing infirmity must appear "so plainly on the face of the record that there can be no rational disagreement as to its existence." *State v. Blanchard*, 409 A.2d 229, 233 (Me.1979). Defendant's repentance and remorse are appropriate factors for consideration in sentencing. *See State v. Farnham*, 479 A.2d 887, 891 (Me.1984). "Courts have widely recognized the relationship between a defendant's willingness to admit responsibility for his acts and the likelihood of his rehabilitation." *Id.* at 891–92. In assessing whether to offer leniency to a defendant because of his claimed repentance and remorse, the court considers his whole course of conduct. *See id.* at 892. While it would be illegal to penalize defendant for exercising his fifth amendment right to remain silent at trial, where as here no evidence exists to support defendant's claim of remorse, we cannot say that the illegality of the Superior Court's decision appears so plainly on the face of this record that it precludes rational disagreement as to its existence.

The entry is:

Judgment affirmed.

All concurring.

---

**2.** Section 1151(6) provides that one of the general purposes of the sentencing provisions is "[t]o encourage differentiation among offenders with a view to a just individualization of sentences." 17–A M.R.S.A. § 1151(6).

**3.** This is not Appellate Division.