**STATE of Maine**

v.

**Wayne ROBINSON.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 26, 1995.

Decided March 31, 1995.

---

Dennis E. Smith, Asst. Dist. Atty., Ellsworth, for the State.

Jeffrey C. Toothaker, Toothaker & Chong, Ellsworth, for defendant.

*Before* WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

DANA, Justice.

Wayne Robinson appeals from judgments entered in the Superior Court (Washington County, *Mills, J.*) following a jury verdict finding him guilty of burglary, 17–A M.R.S.A. § 401 (1983 & Supp.1994), criminal mischief, 17–A M.R.S.A. § 806(1)(A) (1983 & Supp.1994), criminal trespass, 17–A M.R.S.A. § 402(1)(A) (1983 & Supp.1994), assault, 17–A M.R.S.A. § 207 (1983 & Supp.1994), and a violation of a temporary protection order, 19 M.R.S.A. § 769 (1983 & Supp.1994).[1] Robinson argues that the Superior Court abused its discretion by admitting certain evidence at trial and that he was improperly charged with burglary. We affirm the judgments.

The evidence presented at trial may be summarized as follows. Robinson had lived with Wanda Stemplinski in a rented trailer in Machias. On May 19, 1993, Stemplinski obtained a temporary order for protection from abuse that prohibited Robinson from "entering the family residence or the separate residence of the plaintiff," and the Machias police served him with the order that same day. On May 24 Robinson followed Stemplinski to the trailer. Stemplinski went inside and locked the door. Robinson knocked on the door, broke out the window, and unlocked and opened the door. When Stemplinski tried to call the police, Robinson grabbed her and took the phone away. He also grabbed her by the wrists, shirt, and breast.

Stemplinski immediately drove into downtown Machias and, waving frantically, approached Police Chief Dirsa. Crying and distraught, she told Dirsa that she needed an officer to go with her because Robinson had broken into her trailer. Dirsa followed her home, and on arrival observed that the window was broken, the bedroom was in disarray, and the phone was missing. He saw red marks on Stemplinski's wrists. Dirsa also observed that Stemplinski was "very upset. She was afraid that Wayne might still be

---

1. Robinson was found not guilty of theft, 17–A M.R.S.A. § 353 (1983 & Supp.1994), and an additional criminal mischief charge.

there, either inside the trailer or around it. She was—she was shaking, she was crying. She had goose bumps on her arms.... She was really an emotional wreck...."

Still visibly upset, Stemplinski told Dirsa what had happened and wrote a "complainant's statement." Dirsa then asked her about additional facts that she had related orally but had not included in her statement, and she supplemented the statement. According to Dirsa, the written statement was consistent with what Stemplinski told him earlier downtown and at the trailer. While she wrote the statement, Stemplinski was "shaking, there [were] goose bumps on her arms, and she would occasionally stop and put her head in her hands and kind of quietly sob."

That same day, Robinson turned himself in to an officer at the Washington County Jail.[2] At the trial, Stemplinski testified that Robinson was currently her boyfriend and she was pregnant with his child. She testified that she had no recollection of the events that led to the charges against Robinson. In an attempt to refresh her memory, the State showed Stemplinski her written statement, but this did not refresh her memory. To lay a foundation that Stemplinski once had knowledge about the events, the State called Dirsa who testified outside the presence of the jury. When the jury returned, Stemplinski's statement was read to the jury, over Robinson's objection, as a recorded recollection. Dirsa later testified in the presence of the jury regarding his observations and statements made to him by Stemplinski. Over Robinson's objection, the court admitted in evidence Dirsa's account of Stemplinski's statements to him as an exception to the hearsay rule.

■ We turn first to whether Stemplinski's written statement was properly admitted as a recorded recollection. M.R.Evid. 803(5) provides:

The following [is] not excluded by the hearsay rule, even though the declarant is available as a witness ...:

(5) Recorded Recollection. A memorandum of record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admissible, the memorandum or record may be read into evidence but shall not be received as an exhibit unless offered by an adverse party.

There are three criteria which must be established for the admission of the contents of a document pursuant to the rule:

(1) the contents of the document are a record of matters in fact previously known to, and remembered by, him; (2) the record had been previously made, or seen, by him at a time when his memory of the matters was *then* fresh ...; and (3) at that past time the record was *then* remembered to be an accurate record of the matters described.

*State v. Discher*, 597 A.2d 1336, 1341 (Me. 1991) (quoting *Cope v. Sevigny*, 289 A.2d 682, 688 (Me.1972)) (citations omitted, emphasis in original).

In *Discher*, we explained that "[n]o attempt is made ... to spell out the method of establishing the initial knowledge or the contemporaneity and accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate." *Discher*, 597 A.2d at 1341 (quoting the advisory committee's note to Fed.R.Evid. 803(5), which served as a model for the Maine rule). We recognized that at times a witness may be unable or unwilling to testify from present memory that a memorandum represents "a record of matters previously known to him, made by him at a time when his memory was fresh, and known by him to be accurate."

---

**2.** Before turning himself in, Robinson had telephoned officer Donald Kephart. Kephart testified that Robinson told him that

he was in a little trouble and he had messed up.... He said he'd gone out to see Wanda at the trailer, and she wouldn't let him in, so he

broke the window out and went inside. And then he grabbed her, but he did specify to me, he said Don, I didn't hit her, and then he said that—something about, you know, ripping the phone out of the wall, and then he left.

*Discher,* 597 A.2d at 1342 (quoting *State v. Degen,* 552 A.2d 2, 3 (Me.1988)). We stated that at such times "it is within the discretion of the trial court to determine whether the foundational requirements of Rule 803(5) have been satisfied on a case-by-case basis, whether by direct or circumstantial evidence." *Discher,* 597 A.2d at 1342. We concluded that

> [i]t was within the court's discretion to discount [the witness's] present disclaimer of the statements and find it admissible as past recollection recorded for whatever weight the jury saw fit to give it. In view of his unwillingness to testify and his relationship with defendant, it was not error for the court to permit his statements to be submitted to the jury as substantive evidence.

*Id.*

In the instant case, Stemplinski apparently was unwilling to testify against Robinson because of their relationship. Although she could not recall the contents of her written statement, she recognized her signature and handwriting, and remembered giving the statement to Dirsa. In these circumstances, the trial court could rely on Dirsa's testimony and on circumstantial evidence in deciding whether to permit Stemplinski's statement to be submitted to the jury as substantive evidence. Given Dirsa's testimony, the court acted within its discretion in determining that the foundational requirements of rule 803(5) had been satisfied. *See Boehmer v. LeBoeuf,* 650 A.2d 1336, 1340 (Me.1994) (discussing the "considerable discretion" of the court in determining "whether the foundational requirements have been sufficiently met. . . .").

■ Because Stemplinski's written statement was admissible as a past recollection recorded, we need not decide whether Dirsa's account of Stemplinski's oral statements to him, which merely repeated the same information, was properly admitted pursuant to the excited utterance exception to the hearsay rule.[3] Given Stemplinski's written state-

ment, Dirsa's observations, and Robinson's statement to Officer Kephart, any error with respect to admitting this portion of Dirsa's testimony would have been harmless.

■ We also find no merit in Robinson's contention that he was improperly charged with burglary. 17-A M.R.S.A. § 401 (1983 & Supp.1994) provides:

> A person is guilty of burglary if he enters or surreptitiously remains in a structure, knowing that he is not licensed or privileged to do so, with the intent to commit a crime therein.

We have stated that in performing statutory construction, we "will not look beyond clear and unambiguous statutory language." *State v. Edward C.,* 531 A.2d 672, 673 (Me.1987). Robinson was charged with entering the dwelling of Wanda Stemplinski with the intent to commit assault and violate a protective order. The record shows that Robinson had been served with the temporary order for protection from abuse, and that the order prohibited him from entering Stemplinski's residence. Dirsa testified that he observed damage to the trailer consistent with forced entry. He also observed red marks on Stemplinski's wrists. Pursuant to the clear and unambiguous language of 17-A M.R.S.A. § 401, Robinson was properly charged with burglary.

The entry is:

Judgments affirmed.

All concurring.

---

3. M.R.Evid. 803(2) provides:
The following [is] not excluded by the hearsay rule, even though the declarant is available as a witness:

(2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.