**[J-65-2019] [MO: Saylor, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 40 EAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of Superior |
| | : | Court entered on 06/27/2018 at No. |
| | : | 927 EDA 2016 affirming the Order |
| v. | : | entered on 03/03/2016 in the Court |
| | : | of Common Pleas, Philadelphia |
| | : | County, Criminal Division, at No. |
| KAREEM JOHNSON, | : | CP-51-CR-1300424-2006. |
| | : | |
| Appellant | : | ARGUED:  September 10, 2019 |

**DISSENTING OPINION**

**JUSTICE MUNDY**                                      **DECIDED:  May 19, 2020**

The majority extends the protections of our double jeopardy clause by holding that "prosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result." Majority Op. at 29.  I disagree with the majority's substantial expansion of double jeopardy protections, effectively transforming the drastic remedy of barring retrial into a common occurrence.  In my view, such expansion is unwarranted when the previous standard allowed for more uniform application, while sufficiently protecting a defendant's constitutional rights as well as society's interest in holding offenders accountable.  I find our expansion of protections particularly unsettling in the instant case, as it appears to punish prosecutorial errors more harshly than those of defense counsel. While I agree Johnson's conviction cannot stand in light of the mistakes that occurred at

trial, I would not find double jeopardy protections implicated, making the appropriate remedy retrial. Accordingly, I respectfully dissent.

In *Oregon v. Kennedy*, 456 U.S. 667, 679 (1982), the United States Supreme Court held that the double jeopardy clause of the federal constitution bars retrial in cases where the prosecutor's conduct "was intended to provoke the defendant into moving for a mistrial." Pennsylvania initially adopted this test in *Commonwealth v. Simons*, 522 A.2d 537, 540 (Pa. 1987), finding our state constitution's double jeopardy provision coextensive with the federal provision, only to later determine that our provision afforded broader double jeopardy protection than its federal counterpart. In *Commonwealth v. Smith*, 615 A.2d 321, 325 (Pa. 1992), this Court held that our state constitution bars retrial on double jeopardy grounds "not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." We later clarified that the *Smith* standard also included intentional prosecutorial misconduct "designed to harass the defendant through successive prosecutions or otherwise deprive him of his constitutional rights." *Commonwealth v. Martorano*, 741 A.2d 1221, 1223 (Pa. 1999).[1] Despite the *Smith-Martorano* standard being broader than the *Kennedy* standard, both tests required findings of intentional prosecutorial misconduct.

The majority extends the already expansive *Smith-Martorano* standard even further by finding that reckless prosecutorial conduct is sufficient to bar retrial. Majority Op. at 29. While the double jeopardy clause "affords a criminal defendant a 'valued right

---

[1] As the majority recognizes, this Court's decision in *Smith* marked a "return[] to the 'overreaching' litmus that the United States Supreme Court had used prior to *Kennedy*." Majority Op. at 21 (citing *Smith*, 615 A.2d at 324 (quoting *Commonwealth v. Starks*, 416 A.2d 498, 500 (Pa. 1980)).

to have his trial completed by a particular tribunal[,]'" it "does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Kennedy*, 456 U.S. at 672 (additional citations omitted). Accordingly, defendants who successfully appeal their convictions ordinarily receive new trials. *See e.g.*, *United States v. Tateo*, 377 U.S. 463, 465-66 (1964) ("It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.").

Considering "the compelling societal interest in prosecuting criminal defendants to conclusion," this Court views dismissal of charges as an extreme remedy reserved for the most "blatant" prosecutorial misconduct. *Commonwealth v. Shaffer*, 712 A.2d 749, 752 (Pa. 1998). In my view, the most blatant prosecutorial misconduct should require some finding of bad faith intentional misconduct, as opposed to the recklessness standard adopted today. Indeed, this Court has explained:

> Dismissal of criminal charges punishes not only the prosecutor . . . but also the public at large, since the public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law. Thus, the sanction of dismissal of criminal charges should be utilized only in the most blatant cases. Given the public policy goal of protecting the public from criminal conduct, a trial court should consider dismissal of charges where the actions of the Commonwealth are egregious and where demonstrable prejudice will be suffered by the defendant if the charges are not dismissed.

*Id.* at 752 (citing *Commonwealth v. McElligott*, 432 A.2d 587, 589 (Pa. 1981) ("The remedy of discharge without a fair and complete fact-finding procedure is extreme and will not be invoked absent bad faith prosecutorial misconduct.") (additional citations omitted)).

Moreover, the majority's standard is likely to invite more confusion than clarity. Although a handful of states have parted ways with the holding in *Kennedy* in favor of a broader approach, many more states have remained loyal to the *Kennedy* standard due

to its clear boundaries and proper balancing of interests.[2]  Some states have also highlighted the dangers associated with standards that bar retrial for less culpable instances of prosecutorial misconduct.  For example, Texas initially adopted a double jeopardy standard under its state constitution similar to that announced today, only to return to the *Kennedy* standard when that standard proved unworkable in practice.  *See Bauder v. State*, 921 S.W.2d 696, 699 (Tex. Ct. Crim. App. 1996) (holding retrial barred by double jeopardy "not only when the objectionable conduct of the prosecutor was intended to induce a motion for mistrial, but also when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request")*, overruled by Ex Parte Lewis*, 219 S.W.3d 335, 337 (Tex. Ct. Crim. App. 2007) (overruling *Bauder* and adopting *Kennedy* standard).  Moreover, while California ultimately adopted a standard broader than that in *Kennedy*, it cautioned that some states' expansive tests, including Pennsylvania's *Smith-Martorano* test, "blur" the line between prejudicial prosecutorial misconduct violating the due process right to a fair trial warranting mistrial or reversal, and the "exceptional form of prosecutorial misconduct" warranting reversal and barring retrial.  *People v. Batts*, 68 P.3d 357, 377 (Cal. 2003).  Considering Pennsylvania already afforded broader protections than *Kennedy*, I see no basis to expand our standard even further.

Here, the majority's expansion of double jeopardy protections also sends a message that unintentional prosecutorial errors warrant harsher treatment than comparable errors by defense counsel.  There is no question that Johnson's conviction

---

[2] *See e.g.*, *State v. Bell*, 322 N.W.2d 93, 94 (Iowa 1982); *Stamps v. Commonwealth*, 648 S.W.2d 868, 869 (Ky. 1983); *State v. Chapman*, 496 A.2d 297, 300 (Me. 1985); *State v. Duhamel*, 512 A.2d 420, 422 (N.H. 1986); *State v. Diaz*, 521 A.2d 129, 133 (R.I. 1987); *State v. White*, 369 S.E.2d 813, 815 (N.C. 1988); *Harris v. People*, 888 P.2d 259, 266 n.4 (Colo. 1995); *State v. Williams*, 988 P.2d 722, 727 (Kan. 1999); *State v. Michael*, 875 A.2d 510, 534-35 (Conn. 2005); *Ex Parte Lewis*, 219 S.W.3d 335, 337 (Tex. Ct. Crim. App. 2007).

warranted reversal. Instantly, Johnson's post-conviction counsel obtained a forensic report indicating that two baseball caps with separate property receipt numbers had been collected and processed as evidence in connection with the case. The red baseball cap contained Johnson's DNA, while the black baseball cap contained the victim's DNA. At trial, however, both the prosecutor and defense counsel proceeded under the false assumption that a single red baseball cap containing both Johnson and the victim's DNA existed. Upon learning of this mistake, the Commonwealth agreed to a new trial. Johnson then filed a supplemental discovery motion, prompting a lengthy hearing during which the PCRA court permitted post-conviction counsel to develop evidence supporting a motion to bar retrial on double jeopardy grounds under the state constitution. Several trial witnesses, as well as the prosecuting attorney, were called to testify at the hearing. At the close of testimony, the court concluded that although the prosecutor committed a "gross series of unimaginable mistakes," those mistakes did not rise to the level of "bad faith intentional conduct that would permit a judge to bar further prosecution[.]" N.T., 3/3/16, at 40-41. In reaching this conclusion, the court admonished not only the prosecutor's carelessness, but also that of defense counsel, explaining: "It's absolutely intolerable from the point of view of the Commonwealth's work on the case. It's absolutely intolerable from the point of view of the defense representation in this case." *Id.* at 36.

In light of these facts, the appropriate remedy is retrial. The prejudice suffered by Johnson is equally attributable to the ineffective assistance of defense counsel, who likewise failed to appreciate the existence of two baseball caps, despite having access to the same discovery as the Commonwealth. Had Johnson proceeded under a theory of ineffective assistance of counsel, the only means of relief would have been a new trial. Instead, post-conviction counsel strategically proceeded under a theory of prosecutorial misconduct in hopes of obtaining the extraordinary remedy of barring retrial. The

majority's holding rewards this gamesmanship. While the majority denies that its holding is "primarily intended to penalize prosecutorial error[,]" its decision to assign no accountability to defense counsel belies that assertion. Majority Op. at 28.

Finally, even accepting the majority's newly imposed double jeopardy standard, instead of remanding the case to allow the PCRA court to make factual findings concerning whether the prosecutor acted "recklessly" or with a "conscious disregard for a substantial risk" in a manner that deprived Johnson of the right to a fair trial, the majority applies the test itself. *See* Majority Op. at 30-32. In doing so, the majority focuses on the court's use of the words "unimaginable mistakes" as being "strongly suggestive of a reckless disregard for consequences and for the very real possibility of harm stemming from the lack of thoroughness in preparing for a first-degree murder trial." Majority Op. at 31-32. I find it improper to engage in a post-hoc attempt to re-characterize the court's findings in a manner consistent with today's decision where its description of events hinged upon our well-established case law at the time of its decision.

For these reasons, I respectfully dissent.

Justice Baer joins this dissenting opinion.